Next case for argument is 151936, Semcon v. Micron Technology. Mr. Fenster, whenever you're ready. May I please the court? The court should reverse the district court's grant of summary judgment because the district court improperly weighed conflicting deposition testimony and failed to draw all inferences in favor of Semcon. You want us to vacate, not to vacate the grant of summary judgment. That's correct. Vacate and remand. Here's why the deposition testimony from Micron's expert created a question of fact prohibiting summary judgment. Because in all of the record, all of Micron's evidence as to the element of changing parameters during the finishing cycle based on tracked changes comes down to a single sentence in Dr. Dornfeld's deposition. It all comes down to one premise and Dr. Dornfeld admitted in deposition that that premise was false. The only tracked information that Micron relies on in the underlying papers is initial thickness. That's at 190 of the appendix, which is also at 1685. They appear twice. The only tracked information that they identified is initial thickness. They had to show changing control parameters during the finishing cycle based on initial thickness. Is it really based on initial thickness or just changing in response to an evaluation of in situ process information and initial thickness? That's correct. It's a little different. I was reading from the claim. I was paraphrasing. You're absolutely right. The claim language is changing control parameters in response to an evaluation of measured data, which is the in situ process information, and tracked information, which the court construed as pre-process information about the wafer being processed. The only tracked information, so they have to show changing parameters in response to an evaluation of tracked information, which in their case is initial thickness. Is that satisfied by the iterative process of figure 13 and the fact that, say, for example, at blocks 128 and 129, you go ahead and there, do you agree that for 128 and 129, there's some consideration of the initial thickness in order to calculate those amounts in 128 and 129? This is figure 13A. The first answer is no, that the iterative process is not. Yes, I agree that figure 13 does show an input of initial thickness, but that's not what figure 13 is. Let me walk you through, and then you can tell me if I'm wrong. What about in step 130, then, you're going to determine, as I understand it, if any of the sensors have reached the amount of thickness, determine that the amount of thickness is the amount you want to achieve, and then if the answer is no, then you're going to loop back to go right before step 118, and then you're going to go through that process where you'll go ahead and calculate the removal rate, and that removal rate could indicate what your control parameters are. So why wouldn't that iterative process read on the idea of changing control parameters in response to an evaluation? This is the critical point on which this appeal is based, and that is endpoint detection is different. There's a difference between determining whether to stop processing, that's endpoint detection, and changing the parameters during the process before endpoint has been reached. But what if that iterative process, you say, I haven't hit endpoint yet, so now I'm going to go back in the loop, and to that extent, the determination calculating whether your use of the initial thickness and then calculating whether you've hit the desired thickness causes you to go back into the process. Yes. That wouldn't meet the claim limitation because endpoint detection just says, have I reached the endpoint? If not, keep processing. But it's not telling me to change the process parameters, the control parameters, in response to an evaluation of initial thickness. If you'll look at column 13 in the sun reference, at line 66, this is the introduction to figure 13. It expressly discloses that figure 13 is a processing algorithm in order to determine when a process of reducing the thickness of the transparent layer has reached an endpoint. That's it. And that's the reason that Micron, Dornfeld, their expert, didn't rely only on figure 13, because figure 13 doesn't talk about changing process parameters during finishing. Instead, he points to column 8. And column 8 actually explains the difference. So column 8, up above in the paragraph starting in paragraph 13, it's talking about endpoint detection. And then at 41 to 67, this is where he says we're talking about process control during finishing cycle. And he's right, and here's why. It says at line 41, no matter what specific condition is designated as the endpoint of the process of removing material from a transparent layer, that process may be controlled in real time before reaching the endpoint from the information being received in the form of figure 8A. So here's where Sun is now talking about the key element of changing parameters during the finishing cycle. But nowhere in this real-time processing control do they talk about an evaluation of initial thickness. I hear what you're saying. So we both agree, I think, that the removal rate can change the process. After you calculate the removal rate, I think I understand column 8, the part that you're relying on, to say that the rate information can result in an adjustment of the process parameters. That's exactly right. But what if when you determine that you haven't hit the endpoint, you then go back in the iterative process, and that then causes you to recalculate your removal rate? And so therefore, the claim language is simply evaluating the tracked information and changing those process parameters based on the evaluation. I submit that that is, one, that's not what Mike Cron argued below. Two, that's not what the claim requires. The claim requires changing control parameters in response to the evaluation of the in-situ process information and tracked information. The only disclosure of changing control parameters during the finishing cycle is at column 8, lines 41 to 67. That's what Mike Cron relied on, and that's the only thing that the district court relied on. Now, nothing in here refers to initial thickness. And I said at the beginning there was one key statement on which their whole argument is based. And that's because in this section, nowhere does Sun expressly disclose changing control parameters based on an evaluation of initial thickness. It doesn't say that. So instead, what Dr. Dornfeld says in his report is he points to the rate information. And this appears at 206 of the record. So Mike Cron had a motion for summary judgment. Their motion had no analysis on this. They only cite to Dornfeld's declaration. Dornfeld's declaration attaches an exhibit, a claim chart, exhibit A, which appears in relevant part to this claim element at 206. He has one sentence of explanation before block quotes. His one sentence explaining how Sun meets the element of changing parameters in response to tracked information is, namely, Sun discloses a controller and process algorithm which, in response to rate information calculated from the initial thickness of the wafer being polished and information detected from the sensors, can control the CMP. That's his only explanation. The entire premise of his argument that this element is met is that it's based on rate information that he says is calculated from the initial thickness. And you say Sun shows that there is no relationship between the rate information and the initial thickness because rate information is determined by the sensors that are picking up the waves shown in figure 8A that demonstrate the change in thickness, and then you determine rate by factoring in time. That's exactly right. And when I led Dr. Dornfeld through all of the disclosures, these are not snippets. I object to the district court's dismissal of the deposition testimony merely as snippets, which he did without analysis. I led Dr. Dornfeld through every single sentence of paragraph 8, 41 through 67, asking him, does it relate to initial thickness? Where does it show initial thickness? And he admitted that rate information is calculated without reference to initial thickness. That, Your Honor, is at 1914 of the record. It's in the Dornfeld transcript at 404 lines 13 to 18. And I led him through specifically every sentence in column 8, lines 41 through 67, asking him, first, if you look at the top of column 8, it starts with real-time control can be achieved from the information being received in the form of figure 8A. So figure 8A is a signal that shows the change in thickness. But Dr. Dornfeld admitted that the signal in 8A itself does not reflect or contain tracked information. That's at 1914, page 400 of the transcript, lines 13 through 22. I went through the second sentence. He admitted that the second sentence does not describe usually initial thickness. That's at 401, line 25, through 402, line 6. The third sentence is just a definition of rate, has no reference to initial thickness. He admits that at 402, line 7 to 17. And finally, the fourth sentence of that, where it says, in response to such rate information, he admitted that was just referring to the rate information that we just talked about before, which didn't reference initial thickness. And so, Your Honor, all of Micron's evidence, it's a messy record. I acknowledge that, and they've tried to put a lot on the wall. But it all comes down to the one place in his declaration at 206 where he provides an explanation that the only way the tracked information is met is because it's based on rate information, which he says is calculated from initial thickness. But he admits in deposition testimony that rate information is not calculated based on initial thickness. And that, Your Honors, creates a question of fact, and it was improper for the district court to weigh that evidence without any analysis and fail to draw inferences in favor of someone. You began, I think, with the assertion that the tracked information was limited to initial thickness and didn't include the remaining target amount to be removed, which is in Figure 13. And it's also in Dr. Dornfeld's deposition, when you question him, he said both of them. And then it shows up again in his subsequent expert report. So isn't it fair to say that within the record, both of those are to be treated as, yeah. Tracked information, not targeted information. And when you say both of those, you're talking about the initial thickness and the target amount to be removed? Exactly. Okay, so two points. One, if you go to... I mean, I know in his initial report he only referred to the one, but he made clear in his deposition that that wasn't exclusive. In his deposition, he also talked about... So that's true. So first of all, in his report, in their initial motion, in their declaration that they submit with their motion, the only information that they disclose is tracked information, and that's at 190 of the record. Tracked information, but you mean tracked information... Initial thickness. Initial thickness, right. Yes, I apologize, Your Honor. At 190, under tracked information, he says Sun discloses this limitation, namely Sun discloses that an initial thickness of the wafer being polished can be entered by the operator. That's all he refers to. He goes through the later elements that refer to tracked information, only referring to initial thickness. Now, during deposition, it's true. He did talk about the second one, the amount to be removed, but he never shows, and Sun doesn't disclose, changing the control parameters during the finishing cycle in response to the amount of material to be removed. Instead, that only appears in Figure 13, which is only related to endpoint detection. When I asked Dr. Dornfeld in deposition, where does Figure 13, where do you rely on Sun disclosing changing parameters in response to initial thickness? After a discussion of Figure 13, he goes back to... He says the only place that he can point to is Column 8, Lines 41 through 67, which we've already established doesn't relate to initial thickness, nor does it relate to the amount to be removed. I want to emphasize two points in response. First, the court should limit Micron to what they presented on summary judgment. The court should limit its review to the district court's basis for granting summary judgment, which in this case was only Column 8, Lines 41 through 67. As to that, there is conflicting testimony in the record that the district court had no right to weigh and failed to draw all inferences in favor of SEMCON. It should have drawn all inferences in favor of SEMCON, which is that rate information is not based on initial thickness, and if it's not based on initial thickness, or a reasonable juror could so conclude based on his clear admission, Micron's expert, then they have no evidence of changing control parameters during the finishing cycle based on an evaluation of tracked information. I'll reserve my time. Thank you. Good morning, Your Honor. As may it please the court, Jared Bobrow for Micron Technology, the appellee. What we just heard from SEMCON essentially is an argument that is based upon a false premise. The false premise is that the only information that was presented to the district court in support of the summary judgment determination was relevant to Column 8 with respect to rate information, and that is not at all the meets and bounds of the record that was presented to the district court. Remember below, there was no attack, and there has been none here, that Dr. Dornfeld and Micron did not present a prima facie showing that Sun anticipates, and that there was not clear and convincing evidence that each and every limitation was met. That's not disputed here. Let's assume for the moment that Mr. Fenster is correct, that Dr. Dornfeld based his initial report and his testimony in his deposition on the proposition that the tracked information was plugged into rate. That is the statement that he makes at A-206. Let's further assume that we conclude that that's not true. What is your argument if you cannot make the contention that the relationship between tracked information and the claims goes through rate? You're asking me to assume that rate is off the table? Rate is off the table, because frankly I have to say in all candor that I thought that the discussion of rate in the briefs made it pretty clear that rate was coming out of the interference patterns that were measuring the thickness of the wafer, not from anything having to do with initial thickness. You don't need initial thickness in order to determine the change in thickness over time. If the change in thickness over time is being measured as Figure 8A in its discussion indicates, then I don't see where initial thickness comes in. You may disagree with that. I don't know. May I address that? You may, but what I mainly want you to hear is what other grounds you have besides that. You go ahead and address it in case my assumption is wrong. I'd like to be disabused. Thank you, Your Honor. Let me please do both, because rate information, I think, clearly from what Dr. Dornfeld said, the initial thickness information is used, and let me explain how. Figure 8A is showing the amount of material removed using essentially an optical signal, but you'll note in Figure 8A that there is a reference to time, including time sub-letter E, which is essentially the elapsed time from the beginning of the process that material is being removed during the CMP process. That is the elapsed time, and what Dr. Dornfeld said in deposition and what his disclosure in his opening declaration by citing to Sun says, and indeed what Sun discloses, is that you have to figure out what that time is. What is Te? A priori, you have no idea, because what Te represents is the time that it takes to get to the point that your thickness is now the desired thickness. You started at an initial thickness, and the goal of this process is to get to a desired thickness. You will have no idea how long that will take. So what you need to do is you need to measure how much material has been removed, that's the signal in 8A, and you subtract that amount from the initial thickness. That then tells you, are you at your desired thickness or not? That has nothing to do with rate. Yes, it does. I don't see it. Because what Dr. Dornfeld said, and what the rate is described as being in Sun itself, is the amount of material removed over time. Divided by the amount of time you've been going, regardless of whether you could have started with a block of plastic that was an inch and a half thick. You don't care how thick it was, as long as you have the time and the amount removed. That gives you rate. Rate is equal to the amount of material removed divided by time. But what Dr. Dornfeld said, and what Sun says, is that the denominator, that is time, is made with reference to and is calculated from initial thickness information. Initial thickness information is evaluated to determine the time. Because the length of time that goes into that denominator is the time when you start, which is zero, and the elapsed time that it takes to get to the desired thickness. You then say, aha, it took me 47 seconds to shave one micron of material off of this. Well, how do I know it took 47 seconds? The reason I know that is because the target thickness was essentially the starting thickness minus one micron. That was my desired thickness. So, what Sun is saying is, in order to figure out what Te is, the denominator of the rate equation, I need to know the starting thickness, and I look at that, I evaluate it, and I take a look at what my desired thickness is. Why is Te, the denominator, Te is simply a fixed point in time. The denominator has to be the amount of time that you've been polishing. That's right. Te is... Te is just a fixed point. It isn't the denominator of the rate calculation. The denominator has to be a period of time. Well, Te is a period of time which is determined... I thought you said Te was the point at which you have reached the desired thickness. That's a fixed point in time, right? Yes, but you use, as Sun says, you use that elapsed time. You look at the time from the beginning, and indeed, Sun says, and this is set forth in Dr. Dornfeld's opening declaration at Appendix Site 1698, Sun says, quote, By also measuring the amount of time elapsing during the process from its beginning. Measuring the amount of time elapsing during the process from its beginning. Where are you reading from? I apologize. I understand it's A1698. Is it about the middle of the page? It is in the paragraph about the middle of the page that starts no matter what. Okay, thank you. And if you go down about four lines from that, it says, quote, By also measuring the amount of time elapsing during the process from its beginning. A rate of material removal is easily calculated by the controller number 30. A rate of removal is calculated. So what I'm doing is I'm looking at that entire period of elapsed time. And what Dr. Dornfeld is saying, and what Sun is saying, is that I am measuring rate with that elapsed time, 47 seconds, in the denominator of the rate equation. That's exactly what I was saying a moment ago. And you were disagreeing with me. No, I'm not disagreeing at all. I think what the confusion is, and what I'm not explaining clearly, is that what Dr. Dornfeld said and what Sun said is that you are using initial thickness to determine that period of time. In other words, what you're doing is you're saying, I need to figure out how long it's going to take to get to my desired thickness. First thing you need to then know is, have I reached my desired thickness? All true. I agree with that. And then what you do in the evaluation is you then take a look at that, and you say, all right, it's taken me so long. How did you figure out that you had reached your desired thickness? You had to know your starting thickness, because it is by taking the starting thickness minus the amount removed that you achieve and know what your desired thickness is. And that is essentially what Dr. Dornfeld was saying in his deposition when he said that this rate of removal is calculated with reference to the time. The term with reference to really sounds like a weasel word to me in this context. Ah. Reference to, yeah, I mean, in addition to rate, you're interested in another factor in the great context, and that is beginning point and end point. But that doesn't mean that you're calculating rate based on initial thickness. That's my problem. That's why I began with asking you to explain to me why it is that without that piece of the puzzle, you still win. And again, I would say that the claim doesn't require what Your Honor just said. Well, it may not, but I'd like to hear what it is that is your theory if it's not predicated on rate. Sure. Let me go through that. There are several things. First of all, as set forth at pages A, 1698, and 1699, Dr. Dornfeld set forth his opinions and set forth voluminous citations from Sun which show that in figure 13 and also in column 14, that tract information, initial thickness, is used to make these adjustments. We can look, for example, at the top of page 1699. We know, for example, that initial thickness is input into the algorithm, which is figure 13A. That's on page 1699. We know that that initial thickness information is used in a variety of ways, including, for example, at page A, 1684, that initial thickness can be used to determine remaining thickness of the film. So one thing that I can do is use initial thickness to determine remaining thickness. And, Your Honor, I submit it can also be used in that determination of rate. But what is remaining thickness? How does remaining thickness control the CMP process? Other than just tell you when to stop. Yes, it does not just tell you when to stop. What it does is it tells you how much is left in the film because you're going to be checking it periodically. And so if, for example, you look at the remaining thickness and it is too thick, you may decide, I'm going to change the control parameters. Maybe I will polish faster. Maybe I will increase the spin rate. Where is that set in the reference, though? So if we take a look at page A, 1699, and this is a citation to Sun at column 14, lines 56 to 62, it says, quote, the results of the calculations of steps 126 to 129. This is at the top of the first full paragraph. I apologize, Your Honor. Yes, it is. The results of the calculations of steps 126 to 129 can be continuously provided. That is, new quantities of the amount of material removed, the rate of removal, et cetera, can be obtained as often as once for each increment of time elapsing between the calculations indicated by the steps 118 to 128. This allows any necessary adjustments to be instantaneously made in the CMP process. Now, if we look at figure 13A, you can see the outputs in that figure, 125, 127, and 129. What Sun is saying is that I can use any of those outputs. For example, removal rate uniformity, the film thickness, and the amount removed. I can use any of those to make adjustments in real time, instantaneously, to adjust the control parameters. And if you take a look at page 1684, this is again a citation to Sun at column 14, You're saying that this language says that the calculation of the amount of film removed says that that can be used to make these necessary adjustments instantaneously? Yes, it does, because it's referring to all of those results, the results of the calculations of 126 to 129. That is Dr. Dornfeld's characterization of the Sun reference at column 14, lines 56 through 62. That's a quote from Sun, you're right. Oh, I'm sorry, is that a direct quote? That is a direct quote. What he is saying is that I can take those results, rate of removal, and also remaining thickness. And you'll note at page A1684, Dr. Dornfeld again quotes Sun, and he says, quote, There's a reference to initial thickness. He goes on to say, So, what that is saying is that you can take initial thickness information, you can plug it into this algorithm, an output of that will be 130 remaining thickness, and, I'm sorry, 129 initial thickness, remaining thickness information, and that can be used to make adjustments, which is exactly what Sun says at column 14, lines 56 through 62. And the adjustments come in with the looping back, if you haven't gotten to the target? Yes, what will happen is that if there's simply too much thickness, the control parameters can be changed. I can apply more downforce on the wafer. I can increase the slurry rate, that's where the chemical slurry comes in. There are many things that can be adjusted, and you essentially look at that remaining thickness and say, ah, there's too much remaining, I'll make adjustments. That's what Sun is quoted here as saying, and what's in Dr. Dornfeld's declaration. What's important there is that that remaining thickness information was determined through an evaluation of the initial thickness. And so that shows clearly initial thickness leading to remaining thickness, leading to adjustments or changes in control parameters, and it's all in Exhibit A, which is part of the opening declaration by Dr. Dornfeld in support of summary judgment. Number two, another ground that was not addressed by CEMCON at all in its principal brief is LitVac, because the LitVac patent is incorporated by reference in its entirety into the Sun patent. And if you take a look at Dr. Dornfeld's opening declaration, what he says is that LitVac discloses, number one, the use of tracked information. And that is set forth, among other places, at page A1683. And just beneath the flowchart for Sun, you can see where it says that there's a long quote from LitVac, and it refers to using the beginning thickness of the film. He says, quote, if the beginning thickness of the film is known, then its remaining thickness can be measured in real time. So Dr. Dornfeld is identifying that in LitVac it discloses the use of beginning thickness information. And then at pages A1699 running over to 1700, Dr. Dornfeld relies upon LitVac again here to show, again through a quote to LitVac, and this is at the bottom of the page, that you can make real-time in-situ measurements, you can control the process doing that, and one of the things that you can use in that process is, quote, a remaining thickness of a layer. It also refers to rate of removal and various other factors, but it certainly refers to the remaining thickness of the layer. So LitVac is saying, look at the remaining thickness. If I know the beginning thickness, I can figure that out. Then I can make adjustments and control parameters based upon that information. So LitVac also demonstrates this, and LitVac was something that was not addressed in the principal brief of CEMCON at all. It's another basis on which the district court's decision can be affirmed. Although not, I think, referenced by the district court in the brief analysis, which seemed to be predicated mostly on Dr. Dornfeld's treatment of rate. I agree that he did not reference LitVac by name, and certainly figure 13 was a big part of what he relied upon, and also he certainly discussed, the district court discussed column 8 as well. But LitVac is something that was included in the district court's analysis clearly, because the district court did refer to Dr. Dornfeld's exhibit, which is this entire chart exhibit A, and he referred to these portions of exhibit A, and cited paragraph 60 of Dr. Dornfeld's reply declaration, which again referred to all three pages of his declaration that deal with this particular limitation. And there we have discussions of column 8, figure 13, column 14 in LitVac. Does Dr. Dornfeld, in that section, focus in on the column 14 lines 56 through 67? Yes, at page A1699, towards the very top of that page, that's where he discusses that. That's what you were reading from before, but does he... Oh, is that what you were referring to, this document? Is this his initial or his second? This is his initial. Initial. Yes, the exhibit A is... That's what you're referring to.  Okay. Thank you. Thank you. Thank you, Your Honor. Mr. Fenster, let me ask you the same question in reverse which is, if we take it as a given that you're right about rate, everything you had to say in challenging Dr. Dornfeld's statement about the way that initial thickness is plugged into rate is right, how do you deal with the arguments, such as the argument that's made with respect to both LitVac and section and column 14 lines 56 through 67, 54 through 67? Thank you. Two ways. First, it wasn't raised below. Micron's brief cited to Dornfeld Declaration. Dornfeld Declaration, it starts at 1698. At 1698, we're discussing... This is where he discusses the element of changing control parameters in response to an evaluation. There is one sentence that I pointed to you before that has his analysis, and the rest is block quotes supporting his analysis. The only basis that he cites to is the rate information. That's the only thing that the district court relied on. This was not properly presented down below. This was buried in an exhibit to a declaration that's referenced in a single line in a brief, which we responded to, but what was fairly presented below was the rate information. I see your point with respect to some of this, but on page 1699, that LitVac discussion, he does refer to LitVac, and those are his own words, right? Yes, but look at what he says about it, Your Honor. At the bottom of 1699, at the introduction to LitVac, he says, This is Dornfeld, sorry. Additionally, LitVac, which is expressly incorporated by reference, broadly discloses that measurements of a changing parameter can be used for automatically controlling the process in response to the measurements taking place. There is zero reference to tracked information, zero reference to initial thickness or amount to be removed, nothing. What he's telling us, what I read this to say, is that he's citing LitVac for the additional premise that you can change the control parameters based on the measurements, and he's right. Those things that Mr. Bobrow mentioned are measured parameters. They're not tracked information because they're not pre-processed information about the wafer. And so I disagree that it was presented below in this declaration or anywhere else that LitVac is teaching changing control parameters based on tracked information. He specifically leads the court and us to respond only to LitVac as changing control parameters broadly disclosed based on measured parameters, which he did, but didn't mention anything about initial thickness. And that's why the argument was waived below and can't now be brought for the first instance to the court, and that's not what the district court relied on. Assuming away wafer for a moment, what is your answer on the merits? First, with respect to column 14 in LitVac, which would you like to hear first? Both LitVac and column 14 at the bottom of Sun. Okay. So first, with respect to LitVac, because we're there, one, it wasn't properly presented. It's not something that the district court relied on. Second, it's talking about making changes based on the amount about measured properties, not initial thickness. And that's, in fact, that's what Dr. Dornfeld said about it, that measured properties, that the amount of material remaining, remaining thickness of the layer. Remaining material, he adds, can be calculated. If you know the beginning thickness, you know the remaining thickness, obviously. So that is calculated only in the simple sense that it's an arithmetic operation, which is obvious. So with respect to his statements in LitVac, column 3, 25 through 44, why isn't that supportive of Micron's position? Well, it's not something that was presented in his expert report. And so not only was it not properly presented below, but he would be precluded in the district court from so testifying because it was outside the scope of his expert report. He didn't testify to that effect in his expert report, which defines the scope of his testimony, and therefore we weren't fairly put on notice that this is something that we had to respond to, and he wasn't deposed about this point. There wasn't evidence put in about this point. You don't have a fully developed record on this point. We would submit that when we get into this point, there isn't a full disclosure in LitVac that actually discloses changing parameters based on an evaluation of the initial thickness. We think that the remaining thickness is actually a measured parameter, not an initial thickness or not a tracked information. But it's not something that... It's a function of the tracked information, though. It might be. But LitVac says it is. I'm sorry? LitVac says it is. At column 11, lines 8 through 23, he says, of course, if the beginning thickness of the film is known, then its remaining thickness can be measured in real time. Which, by the way, is not cited anywhere in the record below. That's not cited until the appeal papers. Dr. Dornfeld, in his opening report, does not cite to column 11 anywhere. With respect to column 14, column 14 is describing what happens in figure 13. Figure 13, as I pointed out before, is... So we have the arguments about waiver as well, that the court didn't rely on it. They didn't cite to column 14. Dornfeld didn't rely on column 14. Column 13, or figure 13, relates, as described in Sun, to endpoint detection. And endpoint detection is different. And while there is a disclosure in column 14 that says these numbers can be updated, when I asked Dr. Dornfeld, where does it disclose that the results of figure 13 support the element of changing parameters on the fly during the finishing cycle in response to tracked information, he only pointed back to column 8. Because column 8, lines 41 through 67, is where Sun discusses real-time processing control before the endpoint is reached. What column 14 is discussing, as the intro to figure 13 makes clear, is endpoint detection. And endpoint detection is different. And let me leave you with one point to drive home that endpoint detection is different and explain why Dr. Dornfeld's analysis didn't rely on endpoint detection and why Mr. Bobrow's analysis now relying on endpoint detection is wrong. And that is from Dornfeld's reply declaration. This is at 1073 of the appendix. In Dornfeld's reply expert report, he states at paragraph 75, I do not opine that detecting endpoint adjusts any control parameters during the finish cycle time. And so this was his reply report in response to our expert, Dr. Gutman. Dr. Gutman pointed out in response to expert report that endpoint detection is different. It's not changing control parameters during the finishing cycle. In reply, Dr. Dornfeld agrees and says, I don't rely on endpoint detection for changing control parameters. Endpoint detection is different. Figure 13, as it says in Sun, is about endpoint detection. There is no express disclosure in Sun that talks about changing control parameters, adjusting control parameters on the fly during the finishing cycle based on initial thickness. Just remind the court of the standard that they bear the burden of proof here. And you don't. We thank both parties. The case is submitted. That concludes our proceedings for this morning. All rise. The Honorable Court is adjourned until tomorrow morning. It's an o'clock a.m.